May it please the court, Robert Fitzgerald. I represent Michael Hogan. I'm sorry, I'm having trouble hearing. Is the mic operating well? Your Honor, can you hear me? We can hear you, but you could use your your parent or outside voice. Might be good. I'm not sure the mic's working entirely, but anyway, go ahead. May it please the court, my name is Robert Fitzgerald. I represent Michael Hogan, and I'd like to reserve five minutes for rebuttal. This afternoon, I'd like to address three issues time permitting. One, trial counsel was ineffective for failing to timely assist Mr. Hogan in challenging his Iowa manslaughter conviction. Two, the district court failed to properly apply Martinez v. Ryan. And three, the district court's procedural ruling on claims 5a and 5b was in error. I have a question that I it's I'm trying to understand this. There were two special circumstances basically alleged, and one of them was the prior conviction, the Iowa conviction, and the other was doing, hurting two people or whatever, which was the predicate offense, essentially. Do those special circumstances, let's just assume for argument's sake that there wasn't the Iowa conviction. Would the other special circumstance be sufficient for the death penalty? No, Your Honor. To the extent that you're asking whether or not it would have been prejudicial, the answer is yes. No. No. Okay. That's what I'm trying to distinguish. I understand why you would argue it would be prejudicial, but generally, my understanding is each special circumstance, if found to be true, would put you into a possibility of a death penalty. The aggravating circumstances would make Mr. Hogan, that aggravating circumstance would make Mr. Hogan death eligible. Yes, Your Honor. Alone, hypothetically. But here, so when you argue that he is factually innocent of the death penalty because of the Iowa conviction, I don't quite understand that argument because the other special would make him death eligible. I understand the prejudice argument. Your Honor, I'm not actually advancing an actual innocence argument here this afternoon. That was Claim 5C in the Fourth Amended Petition. Our position with Claim 5 is that Claim 5A and Claim 5B, which challenged the aggravating circumstances, had themselves been presented to the Nevada Supreme Court and received merits rulings. Thus, they were not procedurally defaulted. All right. But I, if we're, if this is where we're starting, I have, it seemed to me that actually, you did allege the actual innocence for a good reason originally, which was to deal with the procedural default in State court. And that now, without a substantive actual innocence claim, I don't quite understand how you get any place on A and B, assuming they exist, because they're both really State law issues, mainly. I mean, A has an IAC claim, but that's otherwise in the case anyway. And leaving that out, both of these issues are essentially that under State law, he wasn't eligible for the death penalty. So unless you have an actual innocence claim as well, under at least the speculation in Supreme Court cases, that with actual, actual innocence, you don't have a procedural default problem, and you can get constitutional relief. I don't know where you are. I understand the position and the question, Your Honor. The State has not made any substantive arguments with respect to Claims 5A and 5B, and agrees that if the procedural default ruling was, was incorrect, that remand is appropriate on, on those two claims. And that was pretty much the substance of what I had intended to address with Claims 5A. So in other words, probably futilely, we are going to remand to State, to Federal court on State law issues? Your Honor, I would submit that the proper application of State law to a Petitioner in Mr. Hogan's situation, that he would have had a liberty interest in the State properly applying its law in this capital proceeding. But that's about the extent of the argument that I wanted to spend here. If you think, I mean, the 5A, 5B, 5C thing was very confusing to me, because 5C is an actual innocence claim. But the only substance for 5C is if you've got an argument under either 5A or 5B. In other words, you don't have an actual innocence claim, not even close, unless you can prove either 5A or 5B. So all those things did seem to me to be, to be related, because 5C by itself says nothing. It's not, there's no substance to it. I don't disagree, Your Honor, that a finding on 5A and 5B would be necessary for ruling on 5C, for 5C to be successfully advanced. But 5A and 5B were claims that had been presented to the Nevada Supreme Court. But you're now saying that the — But the District Court dealt with this. The District Court has addressed those claims. Understood, Your Honor. So why would we remand it to the District Court? The District Court has told us, has reached those claims on the merits. I understand, Your Honor. At this point, I don't have any additional argument on that point. The District Court did not address 5B, right? Ever. I do not believe so, Your Honor. I think that the District Court concluded that 5B had been procedurally defaulted when it had been raised in the session. So it actually didn't. It just seems to me that it's a very strange structure because you've now walked away from the actual innocence and without actual innocence, I don't know where you'd get any place. But it is true that the State has agreed that you should remand if we think there's a — that it was not procedurally defaulted. So go ahead with the rest of your argument. Thank you, Your Honor. Turning to the ineffective assistance of counsel claim, which was 2H in the Fourth Amendment petition, trial counsel did too little far too late with respect to a critical aspect of Mr. Hogan's capital trial. That was the Iowa manslaughter conviction. Although counsel challenged the admissibility of that prior conviction in the Nevada proceedings, counsel failed to investigate and assist Mr. Hogan in challenging the validity of that conviction in the state courts of Iowa. Now, my understanding is that at the time, the Nevada law under Hanley, I think they named the case, was really not very different from the Iowa law. And that by challenging it, it was a constitutional claim. It was a constitutional claim citing Nevada cases. And the Nevada cases did seem to say that without telling him what the elements of the crime were, it was not a valid guilty plea. So why wasn't that a reasonable choice instead of going and making a harder argument, which they didn't really have time to do anyway given the fact that they didn't have resources, but to go to Iowa to invalidate it? Because it wasn't essentially the same law at the time. It was then undermined in Nevada by Bryant. But until at the time they did it, it seemed like a pretty good shot. Your Honor, the question here is whether or not counsel performed reasonably in failing to investigate and pursue options in Iowa. Well, I understand that, but if they had a reasonable alternative, which was to do the same thing under Nevada law, then why wasn't that what a reasonable lawyer would do? The reason that that was not reasonable, Your Honor, is because counsel failed to investigate post-conviction options in Iowa. We know that this wasn't a strategic reason on the part of counsel because it never occurred to them to raise the constitutional claim that they raised in Nevada  I guess I have problems with this on the level that I understand why he didn't challenge it earlier, because he was charged with murder, and anyone that does criminal law, and he gets a manslaughter, and factually we know that he choked the person, another woman choked her, hit her head against, kind of knocked her out, and then she's thrown in the car. And it's not clear to me whether he pushed her out of the car or she got out of the car or whatever, and then she died. So had he been challenged at that, and he got eight years. So it clearly went from a murder to a manslaughter to eight years. So there's a lot of good reasons not to say anything about it then. And then there is a challenge, as Judge Berzon says, to, as a special circumstance, to try to say, to try to knock it out before it goes to trial. And then we don't get, it's not challenged again until, I don't know, really a lot of years later. So Martinez is sort of a situation in many ways is, you know, we want people to get a straight shot at challenging something, but it's also an equitable remedy. And I see that your client runs into some problems that way by, you know, by picking and choosing when it's a good time to challenge. Your Honor, we do not need Martinez to reach the substance of this claim. This claim was not deemed to be procedurally defaulted by the federal district court, and the federal district court ruled on this on the merits. But what Your Honor has addressed is the stark similarity of the facts from the Iowa conviction and the Nevada proceedings and demonstrated how prejudicial this prior conviction was going to be in these proceedings. Well, I don't doubt, I don't disagree with you on the prejudice part of it there. But what I guess from the standpoint, but, and I'm not sure that even if the conviction didn't come in, that they couldn't get those facts in. But anyway, about that, there's a motion to strike it. That doesn't work. Then the first habeas, there's no challenge to that, correct? Correct. So then when the challenges come later, isn't it like 15 and 17 years later? No, Your Honor. It was in the second state post-conviction petition, which was in the late 1980s, early 1990s. But it was at that point that that was raised. But when Mr. Hogan eventually made it back into Iowa state proceedings to challenge this, it was too late. And the reason it was too late is because the statute of limitations had run on his ability to collaterally challenge this in the Iowa state courts. You haven't really been responsive to my point about the limits of strickland. This is what I'm, I mean, with regard to the Iowa situation, I mean, there's this whole theory that you need to show that it was what a reasonable lawyer would have done. And then you start looking at documents, and you don't really have any document except the one from your expert that substantiates that it's what a reasonable lawyer would have done. But even the expert doesn't deal with the question of whether the reasonable expert, the reasonable lawyer who had a state law alternative, a state court alternative that looked like a pretty good one at the time would have then gone to Iowa. That's what I'm having a problem with. But this wasn't a choice between two reasonable alternatives that had been thoroughly investigated by counsel. Why not? So you thoroughly investigated, and you find out that the Nevada, at the time they were investigating, they didn't have the stipulation. So it would have been in the same position in Iowa and Nevada. Why not? At the time, strickland tells us to assess counsel's performance under all of the circumstances. Okay. And those circumstances in this case were that a penalty phase proceeding was a near certainty, the Iowa conviction was going to be used, the conviction was highly prejudicial, and counsel had identified that it was constitutionally invalid. Okay. And the only place to challenge the validity of that conviction would be in the state courts of Iowa. No, you can challenge at that time, although not now, because of Lansbury and because of Bryant, you could have challenged it. And he did challenge it in Nevada under Nevada construction of constitutional law. So it's not true you can only challenge it in Iowa. Now it's true, but it wasn't true then. There was only one court that could vacate this conviction, and that was the state court of Iowa. Why did you need it vacated? As Judge Callahan points out, there were downsides to vacating it. One of them is they could have been retried in the meanwhile. That would have put Mr. Hogan in the same position as he was. So there was actually no downside to going and investigating, and that's ultimately what the question is here. Counsel should have contacted an Iowa practitioner and asked the question, we have a constitutionally invalid conviction. How do we challenge this in Iowa? How do we initiate proceedings in Iowa? But counsel did contact the public defender's office, right? Yes, Your Honor. And the public defender's office would be, it seems to me, extremely well positioned to be able to advise on something like this. It should be something that they were quite familiar with. I agree with you, Your Honor. And that is why it's so unreasonable that counsel never asked them the question, how do we initiate post-conviction proceedings once we've identified? What questions did they put to the public defender? Those questions and those inquiries were with respect to collecting records, trial records, and any information with respect to kind of the fact witnesses that may have been involved. Were the public defenders in Iowa aware of what Mr. Hogan's circumstances were in Nevada, what he was being charged with? That I'm not aware of. I mean, that would just be casual conversation. A public defender's office is not likely to just say, sure, we'll get your records, and we don't want to know anything about your case. I mean, context, that's just casual conversation between two public defenders. And to the extent that that casual conversation occurred, it did not include any inquiry about post-conviction options that might have been available to Mr. Hogan in the state court of Iowa. And had counsel asked that question, they would have found out that there was an available post-conviction remedy, and he could have filed a timely post-conviction motion in the state courts of Iowa, and the merits of his claims could have been heard, not exclusively in Nevada, but also in Iowa. The point, again, that in the current constitutional law, that would really matter, because he couldn't challenge the validity of the prior conviction in the habeas. But at the time, he could, and he did. I'm not so sure, Your Honor, that that is accurate. It was unclear at that time. Counsel cited the state v. Scott decision for the ability to bring a collateral challenge in the instant proceeding, but that was a little bit of an outlier. What was known at that time was that bringing a challenge in the court of origin was the traditional method for trying to vacate a conviction on a constitutional basis. And I note that— All right, so if we think that matters, and I'm just struggling with it, then what about—what is the adequacy of the showing as to what a competent lawyer would have done at the time? Any reasonable attorney would have looked to thoroughly investigate ways to challenge and keep that conviction out. And one of the ways, once they identified that there was this constitutional— that it was constitutionally infirm,  they would have picked up the phone, called an Iowa practitioner, and asked a simple question. How do we challenge this constitutionally invalid conviction in the state courts of Iowa? They could have called a public defense organization and posed that question or any of the capital resource organizations. Well, they could have looked in the books. I mean, it wasn't that hard to figure out. They could have done research, Your Honor. That's not really the question. The question is, what kind of showing do you have to make as to what a competent lawyer would have done? I mean, I would tend to agree that it would be malpractice not to do it if it mattered, and I'm not sure it mattered, but if it mattered. And I don't know why you have to make any showing, but the Supreme Court cases seem to think you do have to make a showing. You have to find this somewhere in some piece of paper for some reason. Your Honor, I submit to you that this failure to call and investigate and learn about the facts and law relevant to plausible options was that deficiency. And what I would note is that this is like the dispositive failure in Rompia where counsel failed to take a look at the file, and had they done that of a prior criminal matter, had they looked at that conviction? You don't think you needed to make any showing in the ABA standards or anywhere else. It's just common sense that any competent lawyer would have done this. I think the standards absolutely support our position. They talk about the need to challenge a prior conviction. They do not make a distinction between out-of-state or in-state. Which one talks about challenging a prior conviction? Well, I'd point to the 1984 Champion article that talks about the need to exclude prior convictions as an aggravator. I would note to the— Yes, but that's different from saying you have to go and challenge its validity. Your Honor, investigating and excluding it, on the information that counsel had here, had they pursued something in the state courts of Iowa, they would have been able to exclude that aggravating circumstance. By going to the state courts of Iowa and assisting Mr. Hogan in initiating some post-conviction remedy, they would have had a better reason to ask for stays from the district court. Counsel, you referred to a competent lawyer and referred to sort of a, you know, under all the circumstances, what a reasonable lawyer would do. What role do the relative resources available to these public defenders play in our judgment about this? Didn't the public defenders ask for funds for an investigator? It's my understanding, for the record, that they did not ask for those funds for an investigator. They had an investigator at the public defender's office. No, I thought they'd asked for funds for an investigator for Iowa. I think that's in the record. Your Honor, that's not my reading of the record. I do not believe that they asked for it. I think the district court had, I'm sorry, the trial court had told counsel if they would have asked, they would have made it available. But there never was actually a request for funds. But to your point, they didn't need an investigator to go to Iowa to do further investigation. What they needed to do was call an Iowa practitioner and say, we have a constitutionally invalid conviction out of your court. How do we challenge it there? Had they done that, they would have learned that there was a timely post-conviction motion that could be filed, and then they could have assisted Mr. Hogan in filing it. So when did it need to be filed relative to because it's still been a long time? Certainly, Your Honor. Because he conveniently waited to serve his eight years and get paroled because I can tell you if he challenged it on the day of court, I can tell you what would have happened, and the prosecutor would have said, fine, let's go to trial on murder. He made sure that he got his eight years and got that in the rearview mirror. And that was with respect to the Iowa proceedings. But on November 28, 1984, when trial counsel was appointed to Mr. Hogan's case, they had a responsibility to investigate and prepare for a penalty phase upon appointment. They failed. But in Iowa, what was the statute of limitations to collaterally attack a conviction? June 30, 1987, is when Mr. Hogan could have filed a petition and had it still be timely and heard on the merits. The trial here, appointment happened on November 28, 1984. He could have filed a timely post-conviction motion in Iowa all the way through the conclusion of his direct appeal. He was represented at all times by George Franson and Marcus Cooper. What about if he'd raised it in the first habeas? That would have been timely too, right? It would have been untimely, Your Honor. It would not have been. The time had elapsed at that point. It was beyond the statute of limitations at that point. Do you want to address Martinez's question? Yes, Your Honor. Thank you. The district court failed to properly apply Martinez v. Ryan to Mr. Hogan's procedurally reported claims of ineffective assistance of counsel. A panel of this court and the United States District Court for the District of Nevada have rejected the rationale of the district judge in this case. I cited Snobie Baker in the reply brief and in a 28-J letter directed this court to McNelton v. Gitter. So what about Davila v. Davis? What impact does that have on the availability of Martinez's exception for when ineffective assistance of counsel was not raised in multiple state post-conviction proceedings? It's my understanding Davila just addresses the issue of whether or not Martinez can be used to overcome, to address ineffective assistance of direct appeal counsel. Or whether you had to demonstrate it, for example, on a second petition. But as I understand your claim here, it's that it was defaulted at the first petition. Yes, Your Honor. And that that's the default we're looking at. Correct, Your Honor. And that all the later defaults, rather than saying that there isn't a connection, there is a connection because none of the later defaults would have occurred in a but or since if there hadn't been an earlier default. In the initial state proceeding, yes, Your Honor, that is correct. But any claim not raised in that initial state proceeding was thereafter procedurally defaulted and subject to at least one state procedural bar, ensuring that the merits of Mr. Hogan's claims of ineffective assistance of counsel And at every stage, at 2, 3, and 4, the state court said that it was defaulted as successive. 2, 3, and 4, successive, yes. Therefore, it couldn't have been raised in 2, 3, or 4 in state court because it was defaulted the first time. That's correct, Your Honor. And these claims are the 12 claims that you have listed. Is that right? Yes, Your Honor. Okay. That's listed in your table of contents is A through L. Do we have the opportunity or the right as a panel to review any of those before we send them back to Judge Mahan? My recommendation to the panel for judicial economy would be to send all of those back. The state has not made any arguments under Claiborne that this court needs to be uncertain as to whether Mr. Hogan would be entitled to relief on those. So I would submit to Your Honor that remand would be the most appropriate for all of those claims. Okay, appropriate. Is there anything that would bar us from looking at them and saying this one's not substantial and so we're going to save the district court time? Here's the ones we want you to look at. Your Honor, I do not think that that would be. The substantial inquiry I do not think is what is at issue under Claiborne. Claiborne talks about whether or not you would be in some type of uncertainty with respect to those claims, but it's the trial. Okay, we know what you don't want us to do. Judge Bybee asked you, is there anything that would prevent us from doing that? I think Your Honor could take a look at those. But at a minimum, we need briefing at that point because we haven't had any. Is that right? There's been no briefing on the merits of those claims for the substance or whether they should be considered here. The state has conceded that remand of all claims is appropriate if the district court failed to properly apply Martina's view. But if we wanted to, we would need to ask you to brief it because there's been no briefing. Correct, Your Honor, and at that point I would submit that remanding to the district court or the district court could hold an evidentiary hearing on these claims where it's so inclined would be the best use of judicial resources and appropriate here. I wanted also some clarification of the discussion in your briefs. The state's going to stand up and say that, yes, but there was a timeliness default as well. I don't know that that matters, but you also tried to explain that at the time of the first petition, there was a one-year timeliness, and I didn't really understand that very well. It's a Pellegrino case and so on, but if you could explain it in a couple sentences, I'd appreciate it. I wish I could, Your Honor, but it is a bit of a challenging procedural and historical sense of Nevada's dual remedy system to a single remedy system. At the time Mr. Hogan filed his initial state petition, it was under Chapter 177. Chapter 177, the post-conviction motion, had a one-year and one-day time bar under 177.315. So Mr. Hogan did have to file a state petition within one year and one day. He filed that kind of petition? That's what I don't understand. But he filed the other kind of petition he didn't, or was that up in the air? He did not have a—there was no time bar for a Chapter 34 petition, for the second petition that he raised. But Chapter 34 did require Mr. Hogan to file a Chapter 177 petition first. So in effect, the legislature had created a post-conviction statutory framework that required a petitioner to file all claims in a single petition within one year and one day. So in other words, this is the part I didn't understand and I'd have to look up. What you're saying is that essentially when he filed his second petition, which was not denominated as a 177, it needed to be a 177 and it would have been time barred. Is that what you're saying? I'm sorry, Your Honor. He had to file his Chapter 177 petition first. That was a requirement under Chapter 34. Well, his first petition was a 177 petition. Correct, Your Honor. And that satisfied the requirements so that when he filed the second one, it was okay that it was more than a year later? There was no time bar. But by filing that first petition under Chapter 177, it ensured the Chapter 34 petition, which was his second petition, would be successive under 34-810 and procedurally defaulted in those claims. But not that it was time barred. But not that it was time barred. But I submit to Your Honor that that's a distinction. His claims were procedurally defaulted and they could not be heard on the record. No, I understand. So the timeliness thing is sort of irrelevant because the second one was not time barred. It was successive. It was successive, Your Honor. And three and four were both time barred and successive. Correct, Your Honor. Yes. Do you want to save the balance of your time? I would like to do that, Your Honor. Thank you. All right. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Good afternoon. Matthew Johnson, Deputy Attorney General for the State of Nevada, representing the respondents, appellees in this matter. Your Honors, the reason we're here is because Michael Hogan shot a mother to death and then fired five rounds into her daughter. You know, that's really not relevant to the issues that we're talking about. So go ahead. Thank you, Your Honor. I'd like to start with the Iowa issue. It sounds like we'll spend the majority of our time on the Martinez issue. Well, if I understand your argument, that if you're relying on do you agree with the district court that the Martinez exception does not apply to Mr. Hogan because there is an insufficient causal connection between the alleged ineffective assistance of Hogan's first post-conviction counsel and the procedural default at issue in this case? Yes, Your Honor. There's two parts to that answer to that question. The first is the causal connection. And I think it's clear from Martinez itself. I'll point the Court to 566 U.S. 14 and at the Supreme Court Reporter 1318. And when they're describing the purpose of Martinez, they specifically say that the purpose is to allow our federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors caused a procedural default in the initial review collateral procedure. All right, but it did. I mean, in the initial review collateral procedure, there was a procedural default, right? In the initial petition, Your Honor? Yes. No. What do you mean there wasn't? He didn't raise these issues, and so they were defaulted at that point. I don't know if I understand your question, so I'll go from what I think your question is. There was no procedural default in the first state post-conviction petition. Well, they didn't raise these claims, not the 12 claims that the public defender has raised at this point. That's right. Those claims were not raised. That's right. And so the cause was his post-conviction counsel failed to raise them. That seems to be squarely within Martinez. The Martinez analysis that this court should apply is to first ask the question, when were these particular claims procedurally defaulted? They were raised at the end. That's correct. They were procedurally defaulted at the outset. They weren't raised. The answer to that question is that the procedural default occurred in the third state post-conviction petition. Why? They weren't raised until the third state post-conviction petition. Right, but if they weren't raised, then they were defaulted because they were not raised. They weren't exhausted. So what this court needs to do is to look to the two procedural defaults that were applied to those claims in the third state post-conviction petition. Those were the time bar and the successive petition bar. Okay. Therefore, I even looked at your way, which I don't think is the way to look at it. The way to look at it is what happened at the outset. They weren't raised and they were defaulted. They weren't – and, in fact, in the second and third and fourth petition, everything else that was raised was declared to be successive. So they couldn't have been raised after that. So what does the time – what does it matter how long it took to raise it? There was also a timeliness bar, but it was irrelevant because they were all successive and couldn't be raised. I think there's multiple questions in there, Your Honor. I'll try to take them one at a time. I think there's only one question, but go ahead. I'm sorry you don't like my questions. Well, one involves the time bar and one involves the successive petition bar. And I need to address both of those in order to explain why the district court answered it correctly. So let's start with the time bar. The time bar could not have been the reason the state post-conviction petition – the post-conviction petition, the first one, the attorney there, could not have been the reason for the application of that time bar because the time bar did not exist. It's impossible for the first state post-conviction petition petitioner's counsel's effectiveness to have caused that time bar because the time bar didn't exist. So that's the first one. And the question that has not been answered is whether you only have to overcome one of the time bars in order to get Martinez relief as opposed to both. So that's the answer to that. And I don't think there's been anything put forward that that was not – that was the cause because it didn't exist. If he had asserted all of these in the first – in the second petition, we know that they all would have been declared successive because everything he did raise was declared successive and everything he later raised was declared successive. So what difference does the other thing make? I disagree with Your Honor. In Nevada, the – you can't establish cause and prejudice to overcome a time bar. So he did have an opportunity to establish cause and prejudice in the second post-conviction petition in order to establish that. What would have been cause and prejudice under Nevada law to overcome the time bar? That's anything the petitioner wanted to put forward to blame his first post-conviction counsel or any other reason he could have. But I want to make this clear, Your Honor, because it is important, the timing of when the default occurred. Well, I guess while you're on that, is the reason that the Martinez exception, from your standpoint, is not available to Mr. Hogan because he waited for so long to assert his claims of ineffective assistance of trial counsel, or is it because he failed to assert the claims in his second state post-conviction petition or for some other reason? It goes to both of those reasons, Your Honor, because he waited so long and because he brought it in the third petition. This is why it's so important to understand how Nevada's successive petition bar happens. Any prior petition is the basis for the application of the successive petition bar. In this case, because it was raised in the third and not the second petition, it's not just the ineffective assistance of potentially first state post-conviction counsel, it's also the ineffective assistance of second state post-conviction counsel. And how do we know that's important for Martinez? Because of the language in Martinez itself. And I direct this court to them discussing Coleman, and it says this, the rule in Coleman governs all but the limited circumstances recognized here. This holding does not concern attorney errors in other kinds of proceedings, including second or successive collateral proceedings. And this is so important. What page are you on? I'm pointing the court to page 16. Had the second — is that a question of the second person being answered? Could you answer, Judge Bybee, first, and then we'll go to you? I'm sorry. Go ahead. This is at page 16, the U.S. Reporter, Your Honor, and page 1320. And the interpretation that this court may be suggesting completely contradicts and makes that statement in Martinez meaningless. Fine. If that second petition doesn't — Because the problem here wasn't what happened in the second petition. It's what happened in the first petition. I disagree, Your Honor, because you have to ask the question, what is the state default? When was it applied? It wasn't applied in the second petition. It was applied in the third petition. And this goes to Judge Callahan's point. They waited so long. And that was what the court in Martinez was concerned about, is people dragging their feet and waiting in the third or the fourth or the fifth petition to raise these claims and then claiming equity. And that's exactly what the petitioner did in this case. They could have had a better argument if they would have raised it in that second petition, but they didn't. They waited until the third petition 17 years later. What would their better argument be? They wouldn't have had a timeliness problem, but they still had a successiveness problem. But now the successive petition bar in Nevada wasn't just based on the first. It was based on the second. And Martinez precludes relief based on a second state post-conviction petition. I just read to the court from it, and any other understanding of that renders that language discussing the exception to Coleman nugatory. It would have no meaning unless this court would take into consideration that second petition. So your view of Martinez is if you bring a second PCR challenging the ineffective assistance of counsel on the first PCR, that will get you to Martinez. Once you get beyond that, time's just up. No, my position is you first have to ask the question, what is the Nevada successive petition bar based on? In this case, the claims that they're trying to put forward, the successive petition bar is based on the first and the second petitions. Actually, we have no idea. We don't know. I mean, they just said it was successive. They didn't say whether it was the first one. It was successive because the first one was successive because of the second one. We do because of the definition of the successive petition bar in Nevada and the definition of successive, and I'll just quote the definition. Counsel, if it's based on the second, it looks to me like that would be barred by Davila. I think you'd have a very—at least that's what I think Davila says. So I think it could only be based on the first, and it wasn't raised in the first. Now, as I understand your argument, maybe I've seen it just a little bit differently than I thought I'd seen it before, is that they had one opportunity to challenge the ineffective assistance of the PCR council. Yes. And that would have been at the second petition. That's correct. Okay, so if they had raised this at the second petition, would we be through the Martinez Gateway? No, because the claims aren't substantial. Well, that's different. That's a different problem, but in terms of sort of the form of it, I haven't asked you about the merits. So assume for my purposes that I think that A through L satisfy the Supreme Court's definition of substantial. Sure. Okay, so if they had raised A through L in the second petition, would they be through the Martinez Gateway, and would we be looking at these claims? No, because it was also barred by— Well, I guess the time bar wouldn't be there. You said the time bar wasn't there. So our position, though, is that you have to establish a Martinez basis for both of the procedural defaults. But in that case, because the time bar wouldn't be there, then yes, if it would have been raised. They have a better argument. That would have been a better argument because it would have been—Martinez's claim would have been available. And, again, this language is so important. Wait a minute. So then it would have been, and it was declared successive, right, at the second petition? Not these claims, though, because they weren't raised to the Supreme Court. All right, but it would have been, or let's assume it would have been. If they wouldn't have established—I'm not trying to be difficult, Your Honor, but if they wouldn't have established cause and prejudice to overcome the bars under Nevada law. All right, but IAC was not an applicable cause and prejudice under Nevada law at that point. Right, right. I don't believe it. All right, so they, for aught that appears, i.e., they were declared successive every time, it would have been declared successive. And then what? Then, so they couldn't have raised it in State court at that point. So what good does it do them, exactly? I mean, then they could come to Federal court at that point? Because then they have a valid Martinez claim. They don't have a valid Martinez claim. And why would they have a valid Martinez claim? Because you would have to be excusing the default in the second petition, which you said you can't do. And by valid, I don't mean on the substantial prong. But, yes, if they would have not raised these claims in the third state post-commissioned petition and would have raised them in the second, they wouldn't have had— they would have been able to allege that their first state post-commissioned petition counsel was ineffective and raised the Martinez claim. The problem is they waited until the third. But you would have to be excusing the successiveness in the second petition, and you just read us from Davila that you can't do that. Maybe I'm misunderstanding. In other words, how would you be—how would you excuse the default in the second petition if it wasn't raised in the first petition? You would allege that the first state post-commissioned counsel was ineffective for not raising it. All right. And that's what you just read us that Davila can't do. You can't excuse the second petition. You can only excuse the first one. No. And, again, I'm not reading from Davila. I'm reading from Martinez itself. So to the extent I said that poorly, that's what Martinez itself says, that you can't say second state post-commissioned counsel was ineffective. You can't blame anyone but the first state post-commissioned counsel for ineffectiveness. And because they waited until the third, they have to necessarily blame first and second post-commissioned counsel to excuse the default because the default is not based just on the first state post-commissioned counsel. It's based on the second for also not raising these claims. Only if he could have, which he couldn't have. Yes, he could have. He could have, but that would have been successive, right? If he would have raised the claims in the second instead of the third petition, you wouldn't have the problem with this clause that I just read in Martinez. I don't understand. I just want to read it again just so I make my point clear. This is from Martinez, not from any other. It's the actual case here. The holding in this case does not concern attorney errors in any other kinds of proceedings, including appeals from initial review collateral proceedings and second or successive collateral proceedings. In other words, your opportunity to make a Martinez claim is in that — is in that — Counsel, the same paragraph then goes on to say, it does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial. Yes, Your Honor. So, I mean, that sort of dampens the effect of it. I appreciate the State saying you don't get unlimited opportunities because it appears that under Hogan's theory of Martinez, they could amend their petition today and add 10 more IAC claims, all of which counsel in the first PCR failed to raise. I mean, it just feels like it's just a never-ending cycle. I don't know what the end is. That's the problem with their interpretation of Martinez. They disregard this clause, and it leads to never-ending equity. He could have a tenth position and all of a sudden imagine up another claim and then say it's still first State post-conviction counsel's fault that he didn't do this one. We couldn't come up with for 25 years. That's the reason that the Supreme Court put in this clause to point out that it has to be something that there's an end to. And despite that, Your Honor, which goes to Judge Callahan's point, is embedded in this is equity. And the general principle of equity doesn't apply to something that we don't even come up with a claim until 17 or 20 years later in order to raise it. We have at least twice, maybe more than twice, applied Martinez in the sequence that you're describing, i.e., in Williams and in Smith v. Baker, in both instances, and in some unpublished decisions, you had exactly the same sequence. Is that right? I don't recall looking at Smith v. Baker or Williams in that light, Your Honor, so I don't think I'm prepared to answer that well. They had a 1326. Is that the right number? What is the state? 34.726, Your Honor. 34.726 default and also a successiveness default, and in both instances they just applied Martinez. It could be possible. I don't have those cases in front of us. Well, that's a lie because we have the strongest argument here is precedent, probably. I do want to go back to the original point, though, is that nothing in Martinez says that as long as you can overcome one procedural default, it doesn't matter what a state's other procedural default rules are, and I don't think there's any precedence that this Court can look to that excuses them from having to overcome all of the state default rules that were applied, and it's impossible for them to establish cause and prejudice for overcoming the time bar default because it didn't exist at the time of state post-conviction counsel. So I'm going to take you to another point about the issue for failure to investigate the 1970 conviction. That would be great, Your Honor. What weight, I'm probably doing it as much for myself, but what weight would we give the Nevada Supreme Court's determination that any additional investigation of the circumstances of the Iowa conviction would have been unavailing? What weight do we give that? In terms of a factual statement, Your Honor? Well, didn't the Nevada Supreme Court say that any additional investigation would have been unavailing? I don't. I'm assuming you're reading from the opinions. I'll take your words for what they are. But if it said that, it would have been wrong. No, Your Honor, and I want to make this very clear because I tried to present this at the very beginning of my argument, and we wanted to go to Martina's right away, and so I want to make this clear if I can have that opportunity. Hogan could not have filed a timely Iowa post-conviction petition during the time he was represented by trial counsel. He could not. Why? And I want to explain it. And I want to say this because the history is a little bit complicated. Four months before Hogan married Heidi Hinckley, before trial counsel was even appointed, the Iowa legislature passed Iowa Code 66-3A.3, which prohibited him from filing a petition three years after his 1971 conviction. Then 17 months after the trial was over with, after trial counsel had completed the representation, the Iowa Supreme Court created an equitable exception to that law and said, out of equity, we're going to allow you three years from the passage of the law to file a challenge. So during the entire period that trial counsel represented Mr. Hogan, there was no remedy. Well, we don't know that he could not because maybe he would have been the person in which the Iowa court held this, but your point really goes more toward whether it was an inadequate representation not to have done it because if they had inquired, they would have probably found out that they couldn't have done it is what you're saying, even if, in fact, a creative lawyer could have done it and could have succeeded. Yes, exactly, Your Honor. But trial counsel wouldn't have been ineffective for not pursuing a unique, not the right word, but a novel. Well, because there was an Iowa statute that said you couldn't. Correct. And that Iowa statute was adopted what year, 1984? They actually cite the cases in the statutes in their brief as well, Your Honor. It was adopted. It was passed on May 4th, 1984. It was effective July 1st, 1984. The Iowa code is 663A. Okay. And then when was the date on the Iowa Supreme Court? The Iowa Supreme Court, it was Brewer v. Iowa District Court. That date was, sorry, Your Honor, I should have it better. I'll say the case number first, 395 Northwest 2nd, 1841. It's a 1986 case out of Iowa, and I believe the date, if I've written this down correctly, forgive me if I'm pointing to the wrong published date, is November 12th, 1986. And the date of the trial here. The judgment of conviction was filed on June 18th, 1985. Hogan commits the murder on November 19th, 1984. But am I, I was asking before whether it's not also true that under Nevada law at the time of the trial and federal habeas law at the time would have allowed challenging this conviction, which did happen, and the Nevada law wasn't all that different from the Iowa law, substantive laws to what you had to show in a pleading at the time, although it got stricter. Is that accurate? It is accurate that they could have brought, they challenged it under the federal constitution here in Nevada. They cited Nevada law, Nevada's cases, which did at the time seem to make this plea probably invalid because he was never told what the elements of the crime were or asked whether he had been told them under Hanley. And later, under Brantley, that was kind of loosened up. And so in terms of whether his lawyers were ineffective, it seemed to me that without getting into the niceties of Iowa law, making a choice to challenge it under the Nevada cases on constitutional law was not ineffective. I'd have to refresh my review of comparing Iowa law and Nevada law at the time. Well, but I think the trial judge could have in the context it was brought, could have looked at the plea transcript and was fairly limited as to what and apparently it didn't really describe the crime or whatever and could have said, this isn't sufficient, I'm just going to strike that special, could have done that. If they would have found that it violated the federal constitution, yes. They wouldn't have had to bring a federal challenge in Iowa court in order to get the Nevada judge to invalidate it. To strike the special. And if the special were stricken, then Mr. Hogan would have gone to trial with one allegation, one special circumstance, and the special circumstance was really the circumstances of the crime of killing the mother and shooting and attempting to kill the daughter, right? Yes, and I think this goes to their expert, Mr. Wieners. If you look carefully at what he says, he doesn't say you should have gone to Iowa to challenge it under Iowa law. What he says is you should have gone to Iowa and challenged it under federal law. And the only difference between what counsel here actually did is instead of challenging it under federal law in Iowa, he challenged it in Nevada under federal law. And there's no prevailing professional norm that requires a challenge, an out-of-state challenge to the validity of the conviction at the time, and they haven't presented any in their briefing of the documents before this court. Do you want to challenge the Claim 5 question? Yes, Your Honor. I'd be happy to. The question I have on that is the district court's reading of Claim 5, a single unified claim of factual determination entitled to deference on appeal, or is it a legal issue or a mixed issue? And if we were to conclude that 5B stated a separate claim that was not procedurally barred, do we have to remand it? Because you seem to say don't remand, just agree with me on the Martinez exception, right? Yes. But if you don't agree with me on that, on 5 you say you have to remand? Tell me exactly what you were saying on that. Sure. So there's two—well, there's three ways this court could still affirm what the district court's decision on 5A and 5B. The first way is to recognize, and I think it's clear from the briefing, that Claim 5, the claim that was actually raised, was an actual innocence claim. The reason we know that is because the only way, assuming there is such a thing as actual innocence of the death penalty, a freestanding claim, is you have to invalidate both aggravators and present newly presented evidence. The reason it's set up that way isn't because they're independent claims, but the only way you can establish actual innocence of a death penalty is to invalidate all of the aggravators. So would you agree that, and I talked to counsel for the petitioner on this, that since they're attacking the conviction, if there is no attack that the other aggravator in and of itself would have made Mr. Hogan death eligible? Yes, Your Honor. But so the 1970 conviction or 71 conviction or whatever, a 70 conviction really goes more to the prejudice, not to the actual innocence. That's correct. The second way, and I think this is hopefully made clear in our brief, even if you find that 5A and 5B are separate individual claims, they're still procedurally defaulted. They weren't raised in the state habeas proceedings. They weren't? Not 5B, sorry. 5B was. 5A was not raised in the state habeas proceedings. So it's still procedurally defaulted. Well, first of all, a big chunk of 5A is the same IAC claim that's already before us, right? 5H. Not the ineffective assistance of counsel. All right. If you're saying that, but the underlying direct appeal challenges were not raised. I'll just go through the proceedings. A portion of 5A, but if now they're going to say not only was 5A and 5B stand alone, but actually we have subclaims within 5A and we want some of those to go forward, but 5A as a whole was not raised on direct appeal. It was not raised in the first state postconviction petition. But wait, are you talking about the part of it about this isn't a crime of violence? Yes. But that was even discussed in the second petition, right? In the second petition, it was raised as an actual innocence claim to overcome procedural default only. And if you look at the opening brief in the appeal from the second state postconviction petition, that claim was only raised. No, the actual innocence part of it was raised in order to get to the 5A part of it. No, Your Honor. I just want to make it clear. I see my time is winding down. In Nevada, other than a stand-alone actual innocence claim, you can establish actual innocence under the Schlupp gateway to overcome procedural default. Right. The only way those claims, the only reason those claims were put forward in the opening brief, and it's clear from the opening brief itself, is it was only raised for the purpose of establishing overcoming the procedural default. As to what? As to what? The procedural default as to what? As to the issue in 5A? Right. But it was only raised under a procedural default context, and Castility People's is clear that if they're only addressing it to the extent it's addressing procedural default, it's not a fair presentation under the merits. So it was not raised in that context. My larger problem is the one I articulated earlier, which is the 5A claim about whether it's a violent crime and the 5B claim both seem like state law claims. Yes. Not constitutional claims. And the reason why they were hooked up to an actual innocence was really to be able to get at those claims on the theory that there was a constitutional problem here because there was actual innocence. So you never said that, and I don't know why, but I don't understand. With regard to 5B, for example, what's the constitutional issue we would remand? I think the only claim in 5B is that it's unconstitutionally vague or vague. But the reason it wasn't addressed. But to ask Judge Bybee's question then, would we remand that or would we just say, well, you know, there's a question as to whether it means A or B, but that doesn't make it unconstitutionally vague. It's a state interpretation question. No, and that's the weakest claim. You can totally just recognize it's not unconstitutionally vague. It's probably been affirmed multiple times by multiple courts, and you can just refer to that. But the reason it wasn't addressed. I see my time is up, Your Honor. You can answer the question. The reason it wasn't addressed is because it wasn't raised as an individual claim. It was raised as an actual innocence claim. I don't know what that means. I mean, it said 5A happened and 5B happened and 5C happened. So it just seems ridiculous nitpicking to say, well, 5A and 5B weren't raised. They were raised, but they have a fundamental problem without the actual innocence because without them, it's hard to get at them because they're fundamentally state law claims. But still, I don't know why you say that they're not distinct. I mean, they're distinct. They're called A, B, and C, and they're about different things. And the state addressed them, and I don't know why we'd say they weren't exhausted. They were, but why we would say, but I don't know where that gets you because they're fundamentally state law claims. Because to the extent a freestanding claim of actual innocence even exists, you have to establish an underlying constitutional violation in respect to the death penalty. But not only that, they've abandoned it. So, I mean, it's gone. And without it, if we just, it seems to me we do look at 5A and 5B, but we look at them for what they are without the actual innocence. Without the actual innocence, I don't know that they're anything. But that's a different problem. If you find that the individual claims aren't procedurally defaulted, yes, you could get to the merits. But it's clear that they're not. But the merits are state law merits for the most part. Yes, Your Honor. But it's clear that 5A is procedurally defaulted even if it's a standalone claim. And if you look back through all of the state posting petitions, I think you'll find it very clear that 5A was not completely raised in the state posting petition. So the court still correctly procedurally defaulted it when it ruled that all of Claim 5 was procedurally defaulted. Thank you, Your Honors. Thank you. Thank you. In the limited time remaining, I just wanted to make a couple points. First, Judge Bybee, to your concern about Mr. Hogan being able to continually raise new claims of ineffective assistance of counsel and returning to the state courts multiple times, I would note that Martinez is not the gateway to remedy that concern. Brines v. Weber and the rules regarding a petitioner's ability to amend a petition would actually serve that gatekeeping function. I would also note— Okay, but what—you're here. You brought these—the 12 claims that you got were filed, am I correct, in 2008? And you go to the state court. The Nevada Supreme Court doesn't see those until 2012. Am I correct on that? Yes, Your Honor. Okay, so that's where the comment from the Nevada Supreme Court is that this has been 21 years before they even see these claims for the first time. Is there no limit on Martinez? So can you come in and try and amend things? I think, Your Honor, again, no, Martinez does not have that limit because Martinez is simply concerned about whether or not a petitioner can overcome the procedural default that occurred in the initial state post-conviction petition. I return to the point about Brines v. Weber being the gateway to address your concern, and I would note that the state— Which case, I'm sorry, is the case? Brines v. Weber, the ability of— Oh, Brines. Right, because in fact—I mean, this was unusual in the sense that the federal petition was kept open that long. And I would note, Your Honor, that the state stipulated to Mr. Hogan returning to state court to exhaust these claims on his third trip and then filed a notice of non-opposition when he went back on the fourth trip. So it would be unfortunate if the court was concerned with that. Did that all have something to do with—I mean, when I was reading opinions, I remember there was this George memo around at the time in Nevada about how you're supposed to handle these things. And was that why this was all happening, that the district courts in Nevada were essentially adopting this view that they kept sending people back to exhaust? I don't think so, Your Honor. I think if I was going to be relying on that memo, it would be in the context of equitable tolling. Here, the cause was stayed, and he was permitted to return back. So there was no question that this has always been a state proceeding and filed well before the enactment of HEDPA. So I want to go back. I'm still confused here. So you're saying that the Weber case addresses the limitations on how many times you can amend your petition, right? Not amend, but go back. Request to stay from the federal court and go back to exhaust claims. And at that point, a petitioner would have to show— Okay, if you hadn't brought this in 2008, could you have brought it next year? If we were still in the district court, Your Honor, yes. Yes, we could. Well, what if you weren't in the district court? Could you just come into the district court and say, well, we took another look at this, and now we've got a whole bunch more stuff that we just thought of? Then you have an HEDPA problem. There would be certainly other procedural hurdles that we'd have to overcome, and I do not think— You'd have an HEDPA problem at that point, an HEDPA one-year problem. The only reason you didn't is because it was all being stayed in the federal court forever. I see I'm out of time. I would just note that Claim 5A did argue on direct appeal to the Nevada Supreme Court that the Iowa plea colloquy was unconstitutional, and that was the basis for why that aggravating circumstance couldn't be used. So it's possible that we are actually on 5A, have that constitutional issue before this court, and that's why remand would be appropriate on 5A. Okay, let me make sure my colleagues don't have any additional questions. I do have one question about that last point. But then you have a Lansbury problem, right, if you're trying to, on the merits, get to the constitutionality of the Iowa conviction now. The state court's ruling with respect to whether that plea colloquy was sufficient is a constitutional issue that this court could address. Okay, thank you. Thank you, Your Honor. All right, thank you both for your argument. This matter will stand submitted. All rise. Thank you. I can get it. I got it. Thank you. Thanks.
judges: BERZON, BYBEE, CALLAHAN